UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NORMA JOTBLAD, | Civil No. 04-4009 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CITY OF ST. PAUL, | |
| Defendant. | |

Brian E. Cote, **COTE LAW OFFICE**, 100 Sixth Street North, Suite 550A, Minneapolis, MN 55403, for plaintiff.

Louise T. Seeba, Assistant City Attorney, **ST. PAUL CITY ATTORNEY'S OFFICE**, 550 City Hall and Courthouse, 15 West Kellogg Boulevard, St. Paul, MN 55102, for defendant.

Defendant, the City of St. Paul, employed plaintiff, Norma Jotblad, as a clerk typist. Jotblad brought this action in state court against the City for failure to accommodate her disability, in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. Ch. 363A, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. Defendant removed the case to federal court, and now moves for summary judgment on both claims. For the reasons stated below, the Court grants defendant's motion.

BACKGROUND

Jotblad started employment at the City of St. Paul in the public schools in August 1979. In 1986, she transferred to the Public Works Department, where she was

continuously employed as a Clerk Typist III, until her doctor removed her from work on February 11, 2005 due to low back pain and pelvic instability.

Jotblad has had carpel tunnel syndrome in her right hand since 1970, and she has had several hand surgeries. After her surgery in November 1998, her doctor gave her work restrictions of typing no more than four hours a day. The City allowed her to reduce her typing assignments consistent with her doctor's order. After her surgery in May 2000, her doctor gave her restrictions of typing no more than 30 minutes per hour, no grasping or pinching, and no lifting more than five pounds with her right hand. Her work assignments continued to be consistent with her doctor's orders.

On September 4, 2002, Jotblad explained to her doctor that she was having difficulty typing, even within her 30 minute per hour restriction. Her doctor recommended that she get voice-activated dictation software.

On September 6, 2002, Jotblad began her efforts to receive the dictation software. She communicated with many people at the City of St. Paul. The risk management and workers' compensation office denied payment of the software on October 8. On the same day, the City told Jotblad that she would be reassigned to the Complaint Office for three days a week because her original position would require work on a large typing assignment that could not be completed within her typing restrictions. On October 22 and again on December 4, the City's ADA coordinator told her that the City would not provide the dictation software because she was not substantially limited and did not qualify for an accommodation under the ADA. On March 5, 2003, Jotblad requested that she resume working in her original position. The City refused to return her to her

original job but offered her a position at an asphalt plant, which she reluctantly accepted and started the next week.

On December 22, 2002, Jotblad made another request to the ADA coordinator for the dictation software. In this letter, Jotblad stated that her "work restrictions of no keying over 30 minutes per hour are <u>compatible</u> to my original position and I am able to perform my essential job functions in my original position with or without accommodation." (Emphasis original.) She never received a response. The City retained a new ADA coordinator, and Jotblad made another request for the dictation software on April 30, 2003, which was rejected on May 5.

On June 13, 2003, Jotblad filed a charge of disability discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). On January 6, 2004, the EEOC found probable cause that the City violated the ADA when it refused to provide reasonable accommodation to assist Jotblad with keyboarding, an essential function of her Clerk III position.

On August 13, 2004, Jotblad brought this action alleging that the City failed to accommodate under the MHRA and ADA. On December 8, 2004, the City installed the dictation software on her computer at the asphalt plant. The total cost for the software was $215.65. On February 11, 2005, Jotblad's doctor permanently removed her from work because of unrelated pelvic pain. The City now moves for summary judgment.

## ANALYSIS

**I.   Standard of Review**

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.     The Minnesota Human Rights Act

Jotblad made workers' compensation claims for carpal tunnel syndrome and a hip injury. The City argues that the MHRA claim is barred by the exclusive remedies provision of the Worker's Compensation Act. *Karst v. F.C. Hayer Co.*, 447 N.W.2d 180, 186 (Minn. 1989). Jotblad responds that *Karst* is no longer good law because its reasoning depended on the Act's two-tiered compensation schedule, which was abolished in 1995. Several courts have followed *Karst* after 1995, so this argument is unpersuasive. *See, e.g.*, *Neumann v. AT&T Communs., Inc.*, 376 F.3d 773, 784-85 (8th Cir. 2004). Jotblad further argues that *Karst* only applies in situations where the employer refused to rehire or discharged an employee after sustaining a work injury. Jotblad cites no law in support of this narrow view of *Karst*. Because Jotblad's MHRA claim is barred, the Court grants defendant's motion for summary judgment on the MHRA claim.

## II.     The Americans With Disabilities Act

The ADA forbids discrimination against an employee "because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). To avoid a charge of discrimination,

employers must provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship . . . ." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodation is defined as:

> Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.

29 C.F.R. § 1630.2(o)(1)(ii).

It is undisputed that Jotblad is a "qualified individual" under the ADA, but the parties dispute whether Jotblad is disabled under the ADA, and if so, whether the City provided reasonable accommodation.

### A.  Disabled

To be considered disabled under the ADA, a person must: (1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such impairment; or (3) be regarded as having such an impairment. 42 U.S.C. § 12102(2). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The factors considered in determining whether a person is substantially limited are: (1) the nature and severity of the impairment; (2) the duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i-iii).

Jotblad asserts that she is substantially limited in the major life activities of caring for oneself and performing manual tasks.[1]  She explains that because of her carpal tunnel syndrome she has difficulty performing tasks such as doing the laundry, fixing her hair, and holding a glass.  The City argues that carpal tunnel syndrome is not a disability under the ADA.  *See Cutler v. Hamden Bd. of Educ.*, 150 F. Supp. 2d 356, 358-59 (D. Conn. 2001).

The ADA, however, requires an "individualized inquiry" to determine whether an impairment substantially limits one or more major life activities.  *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999).  Jotblad has severe carpal tunnel syndrome; her right thumb is almost useless.  Her situation is analogous to the plaintiff in *Fenney v. Dakota*. 327 F.3d 707, 716 (8th Cir. 2003).  In *Fenney*, the plaintiff was missing his right thumb, which caused tasks like preparing a meal and bathing to take twice as long as an average person.  *Id.*  Given this impairment, the Eighth Circuit held that the District Court was incorrect when it determined as a matter of law that the plaintiff was not substantially limited in the major life activity of caring for himself.  *Id.*

Jotblad's disability is not particularly strong, but viewing the facts in the light most favorable to plaintiff, the Court finds that Jotblad is disabled under the ADA.

### B.   Reasonable Accommodation

Reasonable accommodation may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position . . . ."  42 U.S.C. § 12111(9)(B).

---

[1] Jotblad devotes one sentence to the argument that she is substantially limited in the major life activity of working.  There is no evidence that she is so limited.  She was employed as a typist for the City for over twenty years, and in all those years, she was working and performing all her job duties at or above expectations.

If more than one accommodation would allow the employee to perform the essential functions of the position, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1137 (8th Cir. 1999). While Jotblad wanted voice-activated dictation software, the City accommodated her disability by keeping her typing assignments within her work restrictions. When a large typing project could not be completed within her restrictions, the City accommodated Jotblad by transferring her to the asphalt plant at the same pay.

The City provided accommodations that enabled Jotblad to perform the essential functions of her job. Accordingly, the Court grants defendant's motion for summary judgment on the ADA claim.

### ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 21] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:   January 25, 2006                             s/ John R. Tunheim     _
at Minneapolis, Minnesota.                                 JOHN R. TUNHEIM
                                                      United States District Judge